**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CASSANDRA A. VALENTINE, *on behalf of herself and those similarly situated*,

    *Plaintiff*,

v.

UNIFUND CCR, LLC; DISTRESSED ASSET PORTFOLIO III, LLC; and JOHN DOES 1 to 10,

    *Defendants*.

Civil Action No. 20-5024

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter involves a debt collector's allegedly misleading collection letter. Plaintiff claims that Defendants were not licensed under the New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J.S.A. 17:11C-1 *et seq.*, and thus the mailing of a collection letter to Plaintiff violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Currently pending before the Court is Defendants' motion to dismiss the First Amended Complaint ("FAC") for lack of subject matter jurisdiction due to Plaintiff's lack of standing. D.E. 66. Also before the Court is Plaintiff's motion to file a sur-reply. D.E. 70. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Plaintiff's motion for leave to file a sur-reply is **GRANTED**, and Defendants' motion to dismiss is **GRANTED**.

---

[1] The submissions consist of Defendants' motion, D.E. 66 ("Br."); Plaintiff's opposition, D.E. 67 ("Opp."); Defendants' reply, D.E. 68 ("Reply"); and Plaintiff's sur-reply, D.E. 70 ("Sur-Reply").

I. **BACKGROUND**

Plaintiff allegedly incurred a debt which was "primarily for the Plaintiff's personal, family, or household purposes." D.E. 35 ("FAC") at ¶ 14. Plaintiff alleges that Distressed Asset Portfolio III, LLC ("DAP III") purchased the "past-due and defaulted Account" and then "assigned, placed, or transferred the Account with Unifund for collection." *Id.* ¶ 21. On April 23, 2019, Defendants mailed a collection letter (the "Unifund Letter") to Plaintiff. *Id.* ¶ 26. The Unifund Letter stated that the "current creditor is DAP III." *Id.* ¶¶ 28-29. Plaintiff alleges, however, that "DAP III is not licensed by the New Jersey Department of Banking and Insurance under the New Jersey Consumer Finance Licensing Act . . . or any other State consumer lending statute." *Id.* ¶ 30. Thus, Plaintiff alleges that Defendants' attempt to collect Plaintiff's debt was prohibited under the NJCFLA and also constitutes a violation of the FDCPA, "including but not limited to 15 U.S.C. §§ 1692e, 1692e(2)(A), 169e(5) [*sic*], 1692e(10), 1692f, 1692f(1), 1692g, 1692g(a)(1), and 1692g(a)(2)." *Id.* ¶¶ 35-36, 41. According to Plaintiff, Defendants used the same procedures when sending the same and/or similar letters to other New Jersey consumers. *Id.* ¶ 40.

Defendants moved to dismiss for failure to state a claim on July 22, 2020. D.E. 9. The Court granted the motion in part and denied the motion in part. D.E. 30; D.E. 31. The Court dismissed Plaintiff's claims under Section 1692f(8) and 1692g, but held that Plaintiff's allegations stated a claim for a violation of Section 1692e. D.E. 30 at 10 ("Unifund's representations that it was attempting to collect a debt that DAP III did not have a license to purchase may violate Section 1692e. Thus, Defendants' motion is denied on these grounds." (footnote omitted)).

Plaintiff then filed the FAC. D.E. 35. On August 19, 2022, Defendants filed the current motion, arguing that the Court lacks subject matter jurisdiction because Plaintiff has not established that she has Article III standing in light of the Supreme Court's decision in *TransUnion*

*LLC v. Ramirez*, - U.S. -, 141 S. Ct. 2190 (2021).  Also pending is Plaintiff's motion for leave to file a sur-reply to respond to authority raised for the first time in Defendants' reply.  D.E. 70.  The Court grants the motion to file the sur-reply.[2]

## II. STANDARD OF REVIEW

Defendants move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  To decide such a motion, a court must first determine whether the party presents a facial or factual attack against a complaint.  A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'"  *Davis*, 824 F.3d at 346 (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  Here, the parties construe Defendants' motion as a facial attack, and the Court agrees.  As a result, like a Rule 12(b)(6) motion to dismiss, "the Court must consider the allegations of the complaint as true."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## III. ANALYSIS

Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "Cases" or "Controversies."  U.S. Const. art. III, § 2.  To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue.  *See Raines v. Byrd*, 521 U.S. 811,

---

[2] The Court grants Plaintiff's motion because Defendants cited authorities for the first time in their reply brief, and the decisions were not rendered until after the motion to dismiss was filed.  *See Zahl v. Local 641 Teamsters Welfare Fund*, No. 09-1100, 2010 WL 3724520, at *3 (D.N.J. Sept. 14, 2010) ("[A] sur-reply is meant only to address new issues raised by the opposing party for the first time in a reply brief.").

818 (1997) (citation omitted); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Subsumed within [Article III] is the requirement that a litigant have standing[.]").  To satisfy Article III's standing requirements, the burden is on the plaintiff to show the following

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Absent standing, there is no case or controversy, and a federal court must dismiss the claims.  *Taliaferro*, 458 F.3d at 188.  The Court must presume that it lacks jurisdiction unless the party invoking jurisdiction establishes otherwise.  *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999) (citing *Phila. Fed. of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998)).

At issue here is the constitutional requirement that a plaintiff establish an "injury in fact" that is "concrete and particularized."  *See Friends of the Earth*, 528 U.S. at 180-81.  The FAC alleges that Plaintiff "received and reviewed the Unifund Letter" which listed DAP III as the current creditor, that DAP III was "not licensed" as required by NJCFLA, and that such letter "deprived Plaintiff and other New Jersey consumers of truthful, non-misleading, information in connection with Defendants' attempt to collect a debt."  FAC ¶¶ 28-30, 36-37.  In other words, because "Defendants had no right to collect the Debt," the "Defendants misrepresented the amount of the Debt" by sending the collection letter.  *Id.* ¶ 39.  Plaintiff argues that "[u]nder the NJCFLA, the debt was rendered void by DAP III's unlicensed acquisition.  Therefore, Defendants' allegation and direct communication with Plaintiff to collect the debt was a concrete harm sufficient for standing."  Opp. at 2.

The Court does not have a "freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct. at 2205 (citation omitted). In *TransUnion*, the Supreme Court clarified that *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 141 S. Ct. at 2205 (internal quotations omitted) ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

Therefore, where a court is analyzing an intangible harm allegedly brought about by a statutory violation, it must ask "whether [the] plaintiff[] ha[s] identified a close historical or common-law analogue for their asserted injury." *Id.* at 2204. For instance, in *TransUnion*, the Court held that the harm from being labeled a "potential terrorist" in a credit report that was disseminated to third parties was a "misleading statement [which] bears a sufficiently close relationship to the harm from a false and defamatory statement." 141 S. Ct. at 2209. Plaintiff argues that the "harm" that arose both here and in *TransUnion* is simply the communication of "materially false, deceptive, and misleading statements." Opp. at 11-12. But the communications in *TransUnion* which gave rise to a concrete injury were, crucially, made to third parties. *TransUnion*, 141 S. Ct. at 2209. And it was the dissemination to third parties that gave the communication "a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* By comparison, as to other class members whose credit reports were not disseminated, the *TransUnion* court ruled that those members "did not suffer a concrete harm." *Id.* at 2212. Plaintiff has not alleged that the misleading information here was shared with any third parties.

Additionally, merely receiving a "misleading" collection letter, as alleged here, is insufficient to establish a concrete injury, absent some action or inaction taken in response or other form of injury. *Id.* at 2214 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III." (internal quotation marks and citation omitted)); *Foley v. Medicredit, Inc.*, No. 21-19764, 2022 WL 3020129, at *4 (D.N.J. July 29, 2022) ("merely receiving a letter from a debt collector that was confusing or misleading . . . does not demonstrate a harm closely related to traditional harms such as those necessary to plead a cause of action such as fraudulent or negligent misrepresentation" (internal quotation marks and citation omitted)); *see also Duncan v. Sacor Fin., Inc.*, No. 22-2742, 2022 WL 16722236, at *4 (D.N.J. Oct. 19, 2022) (citations omitted) (collecting cases in this district that have found that post-*TransUnion*, an FDCPA plaintiff must allege a tangible downstream injury resulting from a misleading collection letter for a court to confer standing); *Daye v. GC Servs. Ltd. P'ship*, No. 21-7981, 2022 WL 4449381, at *3 (D.N.J. Sept. 23, 2022) (citation omitted) ("[W]ithout 'downstream consequences' or 'adverse effects' from the statutory harm, alleging pure statutory violations bears no resemblance to common law actions and therefore does not confer standing."); *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No. 21-16013, 2022 WL 2289560, at *5 (D.N.J. June 24, 2022) (finding that informational confusion, without more, is insufficient to confer Article III standing because while "common law fraud or fraudulent misrepresentation" might bear a sufficiently close relationship to deceptive or misleading debt collection practices, a plaintiff "must at least allege some form of reliance" to establish that relationship); *Rohl v. Pro. Fin. Co*, No. 21-17507, 2022 WL 1748244, at *4 (D.N.J. May 31, 2022) (finding that plaintiff lacked standing because the complaint failed to allege that she "relied on [Defendant]'s representation such that her injury-in-law is transformed into an injury-in-fact," and instead alleged "nothing more than an 'informational harm'"). Plaintiff does

not allege that she experienced any downstream consequence or adverse effect as a result of the Unifund Letter, or that she took any action or inaction in reliance on the Unifund Letter—she merely claims that she and other New Jersey consumers were "deprived . . . of truthful, non-misleading, information." FAC ¶ 37. The foregoing authority, which the Court finds persuasive, demonstrates that these allegations are insufficient to satisfy Article III. Plaintiff has not otherwise established that merely receiving "misleading" information has a sufficiently "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2209. Without more, Plaintiff asserts an "informational injury" that does not constitute an injury in fact.

Plaintiff points to *Uzuegbunam v. Preczewski*, - U.S. -, 141 S. Ct. 792 (2021), for the proposition that "*every* violation of the law necessarily presumes an injury." Opp. at 15 (emphasis in original). But the issue in *Uzuegbunam* is not analogous: there, the Supreme Court considered whether an award of nominal damages by itself could redress a past injury. *Id.* at 798-99. In other words, that case was analyzed after an initial concrete injury—violation of First Amendment rights—had been found. As explained above, Plaintiff has not alleged any tangible harm or an intangible harm that has "a close historical or common-law analogue" as necessary to proceed past the "injury in fact" requirement. *TransUnion*, 141 S. Ct. at 2204; *Friends of the Earth*, 528 U.S. at 180-81.

Plaintiff also argues that *Morales v. Healthcare Revenue Recovery Group, LLC*, 859 F. App'x 625 (3d Cir. 2021), establishes that a plaintiff has standing to bring an FDCPA claim "without showing any harm other than the violation of his statutory rights." Opp. at 12. The Court does not agree with Plaintiff's reading of *Morales*. In *Morales*, the Third Circuit held that a plaintiff had standing to bring an FDCPA claim after the debt collector placed a QR code on an

envelope mailed to the debtor in violation of the statute. *Id.* at 626-28. The *Morales* court began its analysis by noting that "*not all transgressions create standing*—procedural gaffes that cause no 'concrete' injury fall short of Article III's requirements," and then stated that "[i]*f a statutory harm is concrete,* no 'additional harm beyond the one Congress has identified' is required." *Id.* at 626-27 (emphasis added) (citing *Spokeo*, 578 U.S. at 340-41). The circuit then held that placing the QR code on the envelope "disclosed [plaintiff's] protected information, which caused a concrete injury in fact under the FDCPA." *Id.* at 628. Plaintiff has claimed no such invasion of her privacy or disclosure of personal, protected information, and thus, *Morales* is inapposite.

As to the few post-*TransUnion* cases cited favorably by Plaintiff, *see* Opp. at 13-14, 19, they do not sway the Court because the decisions rely on pre-*TransUnion* authority. *See Ozturk v. Amsher Collection Servs., Inc.*, No. 21-18317, 2022 WL 1602192 (D.N.J. May 20, 2022) (relying exclusively on pre-*TransUnion* authority); *Velez-Aguilar v. Sequium Asset Sols., LLC*, No. 21-14046, 2022 U.S. Dist. LEXIS 8842 (D.N.J. Jan. 18, 2022) (relying primarily on pre-*TransUnion* authority); *Bordeaux v. LTD Fin. Servs., L.P.*, No. 16-0243, 2021 WL 443812 (D.N.J. Sept. 28, 2021) (relying exclusively on pre-*TransUnion* authority).

Finally, Plaintiff's arguments in its sur-reply do not change the Court's analysis. The Court does not rely on *Sandoval v. Midland Funding, LLC*, No. 18-9396, 2022 WL 3998294 (D.N.J. Sept. 1, 2022) or *Daye v. Allied Interstate, LLC*, No. 21-07852 (D.N.J. Aug. 26, 2022). Thus, it need not address Plaintiff's arguments attacking those decisions. As to *Daye v. GC Services Ltd. Partnership*, 2022 WL 4449381, Plaintiff argues that the opinion "never expressed any analysis of Congress's role" and thus should not be relied upon. Sur-Reply at 7. But *TransUnion* held that Congress "may not simply enact an injury into existence" and its "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to

8

independently decide whether a plaintiff has suffered a concrete harm under Article III[.]" 141 S. Ct. at 2205; *see also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("Congress may, by legislation, expand standing to the full extent permitted by Art. III . . . In no event, however, may Congress abrogate the Art. III *minima*: A plaintiff must always have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." (citations omitted)). Thus, where a federal court determines that no concrete injury exists under Article III, it lacks authority to hear the matter.

For the foregoing reasons, Plaintiff has not established that she has Article III standing.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file a sur-reply is **GRANTED** and Defendants' motion to dismiss the First Amended Complaint is **GRANTED**.[3] Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended complaint within this time, the matter will be closed. An appropriate Order accompanies this Opinion.

Dated: January 3, 2023

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.

---

[3] Plaintiff requests leave to amend the FAC. D.E. 67 at 21 n.3. A district court may grant leave to amend a pleading even where it finds that standing is lacking. *See Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1417 (3d Cir. 1990) (holding that the district court erred in "concluding that it could not entertain [plaintiff]'s motion for leave to amend the complaint because of its earlier dismissal order" for lack of standing). Leave to amend may be denied only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). While the Court has concerns that any amendment would be futile, the Court will nevertheless grant leave to amend. Because the Court has granted leave to amend, it does not reach Plaintiff's alternative argument to vacate its prior opinion and order dismissing in part the original Complaint. In any event, the FAC superseded the original Complaint as the operative pleading when it was filed.